**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **TARANCE DAMON COUSAR,** | * | |
| **Petitioner,** | * | |
| v. | * | **Crim. No. DLB-21-384** |
| | | **(Related Civ. No. DLB-23-1648)** |
| **UNITED STATES OF AMERICA,** | * | |
| **Respondent.** | * | |

**MEMORANDUM OPINION**

Tarance Damon Cousar, who is proceeding without counsel, has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF 32. The government opposes the motion, ECF 38, and Cousar has filed a reply in support of the motion, ECF 44. No hearing is necessary because the § 2255 motion and the record conclusively show that Cousar is not entitled to relief. *See* 28 U.S.C. § 2255(b); *see also United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021). For the following reasons, Cousar's § 2255 motion is denied.[1]

**I.    Background**

On September 28, 2021, a grand jury in the District of Maryland returned an indictment charging Cousar with one count of possession of a firearm by person previously convicted of a crime punishable by more than one year, in violation of 18 U.S.C. § 922(g)(1), and with one count

---

[1] When Cousar filed his § 2255 motion, he was incarcerated at Federal Correctional Institution ("FCI"), Cumberland. *See* ECF 32, at 1. According to the Bureau of Prisons' ("BOP") inmate locator, Cousar now appears to be at a halfway house. *See Find an inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (search for "Tarance Damon Cousar" or BOP Register Number 69720-509) (listing Cousar's place of confinement as the BOP's Baltimore Residential Reentry Management ("RRM") field office) (last visited Aug. 4, 2026). However, Cousar has not notified the Court of any change of address. Out of an abundance of caution, the Clerk will be directed to send a copy of this opinion and accompanying Order to Cousar at FCI Cumberland and the Baltimore RRM field office.

of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a). ECF 1. At the request of Cousar's counsel, the District of Maryland Probation and Pretrial Services Office prepared a pre-plea criminal history report. ECF 40.[2] Probation concluded that, in light of Cousar's criminal history, if Cousar were convicted of the § 922(g)(1) charge, he likely would qualify as an armed career criminal, which would subject him to a mandatory minimum sentence of 15 years of incarceration. *Id.* ¶ 22; *see* 18 U.S.C. § 924(e)(1).

To avoid that outcome, Cousar negotiated a plea agreement with the government under which he agreed to plead to a one-count superseding information charging him with possession of a stolen firearm in violation of 18 U.S.C. § 922(j). ECF 21. In the plea agreement, which was entered pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to request a sentence between 102 and 120 months of incarceration. *Id.* at 5–6. Cousar pleaded guilty to the superseding information on March 16, 2022. *See* ECF 19.

> Cousar stipulated that the government would have proven the following facts at trial:
>
> In 2021, federal and state investigators began an investigation into drug trafficking and firearms-related incidents in the area of the 1200 block of West Baltimore Street, Baltimore, Maryland. Investigators used CCTV to monitor members of a suspected drug trafficking organization ("DTO") conducting multiple suspected hand-to-hand transactions of controlled dangerous substances ("CDS"). Individuals were seen on CCTV exchanging cash for vials containing suspected CDS, frequently out in the open. The Defendant, Tarance Cousar, was observed on CCTV conducting hand-to-hand drug transactions, including on February 16, 2021 and June 17, 2021.
>
> In April 2021, investigators conducted a controlled purchase operation in the 1200 [b]lock of West Baltimore Street. During the controlled purchase operation, investigators were able to purchase a total of 11 vials of suspected MDMA from the Defendant and another individual. Lab analysis of the suspected MDMA resulted in a positive result for Eutylone, which is a Schedule I controlled substance and is [a] substitute for MDMA.

---

[2] The government has filed a motion to seal the pre-plea criminal history report. ECF 39. Cousar has not filed a response. The government's motion is granted. The Court has not relied on the report as a basis for its denial of Cousar's § 2255 motion.

On June 17, 2021, investigators observed the Defendant on the CCTV system sitting on the corner of Baltimore Street and Stockton Street. Investigators observed the Defendant conduct a hand-to-hand drug transaction.

On June 23, 2021, United States Magistrate Judge Thomas M. DiGirolamo signed search warrants for the Defendant's residence, the Defendant's person, and the Defendant's vehicle. On June 24, 2021, the warrants were executed. During the execution of the search warrant at the Defendant's residence, the Defendant was in the living room. Throughout the execution of the search warrant, the Defendant said to federal agents that everything in the house belonged to him. Investigators searched the residence and recovered the following:

    i.      One Ruger P95 9mm pistol with Serial # 318 45689, located in the kitchen on top of the refrigerator inside of a blue satchel;

    ii.     Thirteen rounds of Luger R-P 9mm ammunition, located in the pistol's magazine;

    iii.    One black plastic bag containing a white powdery substance and a rock substance weighing approximately 62 grams, along with empty packaging material, located in the upstairs front bedroom. Lab analysis confirmed the substance tested positive for Eutylone;

    iv.    One white and black Samsung cell phone contained inside of a black case;

    v.     One black and white CR digital scale with white powdery residue; and

    vi.    One black plastic bag containing multiple zip lock baggies of suspected packaging material.

After he was advised of his Miranda rights, the Defendant agreed to speak with investigators. During his post-Miranda statements to law enforcement, the Defendant continued to acknowledge ownership of all items discovered in the residence, including the loaded firearm in the kitchen and the suspected CDS recovered in the upstairs front bedroom.

A query of the firearm's serial number revealed that the firearm was previously reported stolen from North Carolina. The Defendant admits that he knew or had reasonable cause to believe that the firearm was stolen. The Defendant further agrees that the firearm and ammunition recovered in this case meet the definition of a firearm and ammunition pursuant to 18 U.S.C. § 921 and that the firearm and ammunition were not manufactured in Maryland. Accordingly, the firearm and ammunition recovered in this investigation traveled in and affected interstate commerce.

Prior to the Defendant's possession of the firearm on June 24, 2021, the Defendant had multiple prior felony convictions, including a July 2005 conviction for possession with intent to distribute CDS, an October 2006 conviction for possession

with intent to distribute CDS, and a 2011 conviction for voluntary manslaughter and use of a handgun in a crime of violence.

ECF 21, at 11–12.

Cousar was sentenced on June 15, 2022. At sentencing, the Court accepted the parties' agreement to a sentencing range of 102 and 120 months of incarceration. When calculating the guidelines, the Court increased Cousar's offense level by four pursuant to U.S.S.G. § 2K2.1(b)(4)(B) after determining that the firearm Cousar possessed had an altered serial number. ECF 30, at 1. In light of Cousar's criminal history, this enhancement resulted in an advisory guidelines range of 121 to 151 months, which translated to a guidelines sentence of 120 months— the statutory maximum penalty for a violation of § 922(j). *Id.*; *see also* U.S.S.G. § 5G1.1(a); 18 U.S.C. § 924(a)(2). The Court then sentenced Cousar to 102 months of incarceration—the bottom of the parties' stipulated sentencing range—followed by two years of supervised release. ECF 29. Cousar did not appeal.[3]

Cousar filed the pending § 2255 motion on June 16, 2023. ECF 32. Cousar brings two claims for relief. First, he argues that § 922(j) violates the Second Amendment to the U.S. Constitution in light of the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). *Id.* at 4. Second, he argues that the four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(4)(B) also violates the Second Amendment in light of *Bruen* and the Southern District of West Virginia's decision in *United States v. Price*, 635 F. Supp.

---

[3] Cousar's plea agreement contained an appeal waiver, but he did not waive his right to file a collateral attack (save for waiving his right to challenge the forfeiture of property via a habeas petition). ECF 21, at 6–7. The government does not argue that Cousar's claims are barred by the fact of his guilty plea, his plea agreement, or procedural default, so the Court proceeds to the merits.

3d 455 (S.D. W. Va. 2022), *rev'd and remanded*, 111 F.4th 392 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1891 (2025).[4] *Id.* at 5.

## II.      Standard of Review

Section 2255 allows a prisoner in federal custody to move to vacate, set aside, or correct their sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). Cousar bears the burden of showing that his sentence is unlawful. *See United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010). The Court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," in which case dismissal is appropriate. 28 U.S.C. § 2255(b); *see Mayhew*, 995 F.3d at 176.

## III.     Discussion

### A.      Second Amendment Challenge to 18 U.S.C. § 922(j)

In his first claim for relief, Cousar argues that § 922(j) violates the Second Amendment. The government responds that § 922(j) is not unconstitutional because it does not criminalize conduct covered by the Second Amendment's plain text, and even if it did, the law is justified by historical analogues.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S.

---

[4] In his § 2255 motion, Cousar asserted a third claim: that the sentencing enhancement under U.S.S.G. § 2K2.1(b)(4)(A) is unconstitutional under *Bruen*. ECF 32, at 7. However, the Court did not apply that enhancement at sentencing. ECF 38, at 16–17. Cousar withdrew this claim in his reply. ECF 44, at 3.

Const. amend. II. Section 922(j) states in relevant part that a person may not "receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition . . . which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce" if the person "know[s] or ha[s] reasonable cause to believe that the firearm or ammunition was stolen." 18 U.S.C. § 922(j).

The Supreme Court has adopted a two-part test to determine whether a statute such as § 922(j) violates the right to bear arms under the Second Amendment. *See Bruen*, 597 U.S. at 24; *see also Price*, 111 F.4th at 398; *Bianchi v. Brown*, 111 F.4th 438, 445–46 (4th Cir. 2024) (en banc). First, the court must determine whether the "plain text" of the Second Amendment covers the conduct the statute restricts. *Bruen*, 597 U.S. at 24. "If the text does not extend to the desired conduct, that conduct falls outside the ambit of the Second Amendment, and the government may regulate it." *Bianchi*, 111 F.4th at 446. If the text covers the conduct, "the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. In that case, the court proceeds to a second step wherein the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

Cousar does not state whether he intends to bring a facial or an as-applied constitutional challenge to § 922(j). Mindful of Cousar's pro se status, the Court will assume that he intends to do both. "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). "To succeed in a facial constitutional challenge, a movant 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Hosford*, 843 F.3d 161, 165 (4th Cir. 2016) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). An as-applied challenge, on the other hand, is "based on a developed factual record and the application of a statute to a specific person."

6

*Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc). "When a court reviews an 'as-applied' challenge, it must examine only the application of the law to the particular parties and the facts of the case before it, without considering whether the statute theoretically could be construed as unconstitutional in another hypothetical case." *United States v. Mgmt. Consulting, Inc.*, 636 F. Supp. 3d 610, 619 (E.D. Va. 2022).

The Court begins with Cousar's facial challenge. The Court will bypass step one of *Bruen* and assume without deciding that the plain text of the Second Amendment covers conduct criminalized by § 922(j). Even so, the government has met its burden at step two. As the United States Court of Appeals for the Sixth Circuit explained when presented with a facial Second Amendment challenge to § 922(j), statutes forbidding people from receiving and possessing stolen goods date back to the colonial era, and "there is no indication that firearms were exempt from such laws." *United States v. Gore*, 118 F.4th 808, 812 (6th Cir. 2024) (internal quotation marks omitted). The *Gore* Court provided helpful examples of such laws, including a New Hampshire statute from 1714, a New York law from 1788, and an Ohio statute from 1831. *Id.* at 812–13. Other courts have pointed to additional examples. *See, e.g.*, *United States v. Wright*, Nos. 3:23-CR-23-KAC-JEM & 3:22-CR-49-KAC-JEM, 2024 WL 422156, at *3–4 (E.D. Tenn. Feb. 5, 2024), *aff'd on other grounds*, No. 24-5441, 2025 WL 2051226 (6th Cir. Jul. 22, 2025). The Court agrees with the Sixth Circuit that "[h]istory 'confirm[s] what common sense suggests': the government may regulate the possession, purchase, and sale of goods that are known or believed to be stolen." *Gore*, 118 F.4th at 813 (second alteration in original) (quoting *United States v. Rahimi*, 602 U.S. 680, 698 (2024)). And that includes firearms. Because § 922(j) is consistent with this country's historical tradition of firearm regulation, Cousar cannot prevail on his facial challenge.

The Court now turns to Cousar's as-applied challenge. Here, too, Cousar falls short. Even if there were some circumstances in which § 922(j) violates the Second Amendment—rendering it vulnerable to an as-applied challenge—Cousar has not shown that his case is one of them. He does not identify any distinctive feature of his case that would make § 922(j) unconstitutional as applied to him. In his § 2255 motion, Cousar simply states, without any discussion of his particular circumstances, that § 922(j) is unconstitutional under *Bruen*. ECF 32, at 4. That is insufficient because an as-applied challenge requires the court to "focus[] on the circumstances of the particular [petitioner] and whether, in light of those circumstances, the challenged law was unconstitutionally applied to *th[at]* [petitioner]." *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 225–26 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1049 (2025). Cousar has not met his burden to show that § 922(j) is unconstitutional under the specific circumstances of his case.

In reaching this conclusion, the Court joins the overwhelming consensus among the federal courts. Although the United States Court of Appeals for the Fourth Circuit has not yet addressed whether § 922(j) violates the Second Amendment in light of *Bruen*, *see United States v. Claybrooks*, 90 F.4th 248, 256 (4th Cir. 2024), numerous courts outside the Fourth Circuit have held that it does not—some in the context of facial challenges, others in the context of as-applied challenges. Some courts have concluded that § 922(j) does not criminalize conduct covered by the Second Amendment's plain text. *See, e.g.*, *United States v. Bost*, No. 2:21-cr-30-CCW, 2023 WL 7386567, at *3 (W.D. Pa. Nov. 8, 2023) ("the Second Amendment does not protect Mr. Bost's proposed conduct—possession of a stolen firearm"), *appeal docketed*, No. 24-1719 (3d Cir. Apr. 23, 2024); *United States v. Rivera*, No. 4:23-cr-00005-WMR-WEJ, 2024 WL 1132860, at *4 (N.D. Ga. Jan. 25, 2024) ("No one has a Constitutional right to possess anything stolen from someone else."), *R&R adopted*, 2024 WL 1095745 (N.D. Ga. Mar. 12, 2024). Others, like the Sixth Circuit

in *Gore*, have concluded that even if § 922(j) does criminalize conduct covered by the Second

Amendment's plain text, § 922(j) is consistent with this country's historical tradition of firearm

regulation. *See, e.g.*, *Gore*, 118 F.4th at 812; *United States v. Lewis*, 682 F. Supp. 3d 1038, 1059–

61 (S.D. Ala. 2023); *Wright*, 2024 WL 422156, at *3–5; *United States v. Greer*, No. 4:17-CR-

94(1), 2023 WL 4747383, at *1 (E.D. Tex. Jul. 24, 2023). But regardless of whether courts have

resolved the *Bruen* challenge at step one or step two, facially or as-applied, the Court is not aware

of any court that has concluded that § 922(j) violates the Second Amendment under *Bruen*. This

consensus of authority further supports the Court's rejection of Cousar's Second Amendment

claim.

 Cousar's Second Amendment challenge to § 922(j) fails.[5]

---

[5] In connection with this claim, Cousar also makes the following argument: "The United States Supreme Court held that the residual clause in 18 U.S.C. [§] 924(c)'s definition of a crime of violence was unconstitutionally vague. This recognizes the specific right that the defendant has. The defendant's conviction and sentence under [§] 922(j) must be vacated because the conviction is unsupported by a valid predicate offense." ECF 32, at 4.

 It is unclear what Cousar means. Section 924(c) criminalizes, among other things, using or carrying a firearm "during and in relation to," or possessing a firearm "in furtherance of," a "crime of violence." 18 U.S.C. § 924(c)(1)(A). Cousar is correct that the Supreme Court has held that part of § 924(c)'s definition of a "crime of violence" is unconstitutionally vague. *See United States v. Davis*, 588 U.S. 445, 470 (2019); 18 U.S.C. § 924(c)(3)(B). But Cousar was not convicted of violating § 924(c). Nor does § 922(j), Cousar's statute of conviction, make any reference to a "crime of violence" as that term is defined in § 924(c)(3). *Davis* does not help Cousar.

 Similarly, it is not clear what Cousar means when he says that his § 922(j) conviction is "unsupported by a valid predicate offense." ECF 32, at 4. A person does not need to have been convicted of any predicate offense to violate § 922(j). Instead, they need to "receive, possess, conceal, store, barter, sell, or dispose of" a stolen firearm or ammunition that has traveled in interstate commerce, while knowing or having reasonable cause to believe that the firearm or ammunition was stolen. *See* 18 U.S.C. § 922(j). That is what Cousar admitted he did. Cousar is not entitled to § 2255 relief on this argument.

### B.    Second Amendment Challenge to U.S.S.G. § 2K2.1(b)(4)(B)

Cousar next contends that U.S.S.G. § 2K2.1(b)(4)(B) violates the Second Amendment.[6] At the time of Cousar's sentencing, that subsection of the sentencing guidelines directed courts to increase a § 922(j) defendant's offense level by four if the firearm had an altered or obliterated serial number. U.S.S.G. § 2K2.1(b)(4)(B) (2022).[7] Once again, it is not clear whether Cousar intends to challenge § 2K2.1(b)(4)(B) on its face or as applied to him, so the Court assumes he means to do both.[8]

Begin with Cousar's facial challenge. Cousar contends that § 2K2.1(b)(4)(B) is unconstitutional under *Bruen* in light of a district court decision, *United States v. Price*. In *Price*, the United States District Court for the Southern District of West Virginia held that 18 U.S.C. § 922(k), which prohibits possessing or transporting a firearm with a removed, altered, or obliterated serial number, violates the Second Amendment under *Bruen*. 635 F. Supp. 3d at 464. Cousar contends that this decision requires this Court to find § 2K2.1(b)(4)(B) unconstitutional

---

[6] "[E]rrors in the application of the Sentencing Guidelines" generally cannot be challenged on a § 2255 motion. *United States v. Foote*, 784 F.3d 931, 940 (4th Cir. 2015) (quoting *United States v. Pregent*, 190 F.3d 279, 284 (4th Cir. 1999)). The government has not argued that this rule bars Cousar's constitutional challenge to § 2K2.1(b)(4)(B).

[7] The language of the guideline has since been updated. *See* U.S.S.G. § 2K2.1(b)(4)(B).

[8] The government argues, citing an unreported district court decision from West Virginia, that "the Second Amendment framework under *Bruen* is not [even] applicable to challenges to specific offense characteristics under the Sentencing Guidelines." ECF 38, at 14 (citing *United States v. Abdullah*, No. 5:22-cr-00046-4, 2023 WL 3136525 (S.D. W. Va. Apr. 27, 2023)). But since *Bruen*, at least one court of appeals has considered whether a guidelines enhancement violates the Second Amendment. *See United States v. Alaniz*, 69 F.4th 1124, 1126 (9th Cir. 2023) (considering whether U.S.S.G. § 2D1.1(b)(1) is constitutional under *Bruen*); *see also, e.g.*, *United States v. Voelz*, 66 F.4th 1155, 1163–65 (8th Cir. 2023) (conducting plain-error review of claim that § 2D1.1(b)(1) is unconstitutional under *Bruen*); *United States v. Thompson*, 62 F.4th 37, 43 (1st Cir. 2023) (enforcing appeal waiver as to claim that § 2K2.1(b)(4)(B) violates Second Amendment and stating that "[i]t is far from clear that § 2K2.1(b)(4)(B) is unconstitutional"). Absent more persuasive authority for the government's argument that *Bruen* does not apply in this context, the Court will not deny Cousar's motion on that basis.

because that guidelines provision "share[s] the same identical language" as § 922(k). ECF 32, at 5. However, while Cousar's § 2255 motion was pending, the Fourth Circuit reversed the district court's decision in *Price* and concluded that § 922(k) does not violate the Second Amendment. *See Price*, 111 F.4th at 408. The en banc court resolved the inquiry at *Bruen* step one, concluding that firearms with removed, altered, or obliterated serial numbers were not "weapon[s] in common use for lawful purposes"; thus, "the conduct regulated by § 922(k) does not fall within the scope of the right enshrined in the Second Amendment[.]" *Id.* at 397. Because § 2K2.1(b)(4)(B), like § 922(k), does not penalize conduct within the scope of the Second Amendment, it is not facially unconstitutional.

Nor has Cousar shown that § 2K2.1(b)(4)(B) is unconstitutional as applied to him. It is not even clear that such a challenge could succeed after *Price*, since the *Price* Court categorically held that firearms with altered serial numbers are not "weapon[s] in common use for lawful purposes." *See id.* If they are not, it is hard to see how any application of this enhancement could possibly implicate the Second Amendment. But even if it could, Cousar has not pointed to any particular circumstances of his case that make § 2K2.1(b)(4)(B) unconstitutional as applied to him. That dooms his as-applied challenge.

Cousar's Second Amendment challenge to § 2K2.1(b)(4)(B) fails.

## IV.    Certificate of Appealability

The accompanying Order is a final order adverse to Cousar. Thus, the Court must issue or deny a certificate of appealability. Rule 11(a), *Rules Governing Section 2255 Cases in the U.S. Dist. Cts.* Cousar must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a § 2255 petition on the merits, as here, a petitioner may satisfy this standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Cousar has failed to demonstrate that a certificate of appealability should issue. He may ask the Fourth Circuit to issue one. *See* Fed. R. App. P. 22(b).

## V.      Conclusion

Cousar's § 2255 motion is denied. A separate Order follows.

Date:  August 4, 2026

_____
Deborah L. Boardman
United States District Judge